IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA



OPTOLUM, INC.,                    )
                                  )
            Plaintiff,            )
                                  )
      v.                          )        1:17CV687
                                  )
CREE, INC.,                       )
                                  )
            Defendant.            )

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Presently before this court is Plaintiff OptoLum, Inc.'s ("OptoLum") Motion to Compel Restoration and Production of E-mail Attachments. (Doc. 154.) Defendant Cree, Inc. ("Cree") has responded, (Doc. 157), and Plaintiff has replied, (Doc. 158). At this court's request, (see Minute Entry 11/08/2018), OptoLum filed an additional memorandum in support of its motion, (Doc. 162), and Cree responded in opposition, (Doc. 164). For the reasons set forth herein, Plaintiff's motion will be granted, but the parties will split the cost of restoration.

## I. FACTUAL AND PROCEDURAL HISTORY

Until 2015, Cree employed an e-mail archiving system called Mimosa NearPoint (the "Mimosa System"). (Def.'s Resp. to Pl.'s Mot. to Compel ("Def.'s Br.") (Doc. 157) at 3, 5.) The Mimosa

System archived e-mail attachments larger than one megabyte, replacing them with a slipsheet containing a link that users clicked to retrieve the archived attachment from a Mimosa server. (Id. at 3.) This process is known as "stubbing." (Id.) The slipsheet includes the archived attachment's file name, file size, and URL, which indicates the file type. (See Pl.'s Mem. in Supp. of Mot. to Compel ("Pl.'s Br.") (Doc. 155) at 2; see, e.g., Declaration of Leah R. McCoy ("McCoy Decl."), Ex. B (Doc. 155-3) at 4.)

In February 2013, Cree turned off the stubbing feature due to technical problems. (See Def.'s Br. (Doc. 157) at 4.) Cree also discovered that some of the archived e-mail attachments were corrupted and could not be retrieved. (Id.) In November 2015, a year before OptoLum filed its Complaint in this case, Cree began to transition its e-mail management system from the Mimosa System to a cloud-based Microsoft Exchange e-mail system (the "Microsoft System"). (Id. at 2, 5.) Cree completed this transition in February 2017, (id. at 5), after OptoLum initiated this lawsuit. While the Mimosa System servers are now off-line, Cree did not destroy the servers because of document-retention obligations related to this litigation. (Id.)

As part of the Mimosa-to-Microsoft transition, Cree employed a third-party software product, Archive360, to restore,

unarchive, and extract the data out of the Mimosa System. (See id. at 2, 5.) Most of the previously corrupted e-mail attachments could not be restored and therefore were not re-archived in the Microsoft System. (Id. at 5.) Cree's IT team was able to recover some of the corrupted attachments from "an older storage platform." (Id.) The remainder of the previously-corrupted and missing e-mail attachments were transferred from the Mimosa System to the Microsoft System with the attached Mimosa stub slipsheet intact. (Id.)

To date, the parties have conducted substantial discovery. Under the current discovery schedule, the parties are to complete fact discovery by January 22, 2019.[1] (See Order (Doc. 161).) During the course of discovery, OptoLum realized that many of the attachments to e-mails that Cree had produced were missing; attached instead were the stub slipsheets with an inactive link to the document URL. (See, e.g., McCoy Decl., Ex. B (Doc. 155-3) at 4; see also Def.'s Br. (Doc. 157) at 6.)

---

[1] Considering Cree's restoration obligations pursuant to this Order, the parties may submit an amended discovery plan extending the close of fact discovery, if necessary. This court believes that the parties should be able to complete the restoration process quickly due to their resources, the relatively short amount of time needed (fifty-four hours at most), (see Affidavit of Derek Ellington, Ex. JJ (Doc. 156-36) ¶ 12), and the minimal time that would be needed to review any restored data.

On April 21, 2017, a district judge in another court entered a protective order in a related case between the parties, which was filed in this case as well. (Electronically Stored Information Order ("ESI Order") (Doc. 63).) The ESI Order provides that:

> [a]bsent a showing of good cause, no party need restore any form of media upon which backup data is maintained in a party's normal or allowed processes, including but not limited to backup tapes, disks, SAN, and other forms of media, to comply with its discovery obligations in the present case.

(Id. ¶ 5f.)

After discussing the missing attachments for several months, (see Def.'s Br. (Doc. 157) at 6-8), OptoLum provided Cree with a spreadsheet on September 13, 2017, identifying the allegedly missing attachments and asked that Cree search its document database for the documents. (See McCoy Decl., Ex. J (Doc. 155-11) at 1.) The spreadsheet identified between 275 and 300 e-mails, resulting in 465 uniquely-named files, according to Cree. (Compare Def.'s Br. (Doc. 157) at 8-9, with McCoy Decl., Ex. M (Doc. 155-14) at 1.) OptoLum agreed to forego any requests to restore the Mimosa System if Cree could find the documents on the spreadsheet elsewhere. (McCoy Decl., Ex. J (Doc. 155-11) at 1.) Cree eventually agreed to search for the documents, except those with generic names that generated an unreasonable number

of search hits. (Def.'s Br. (Doc. 157) at 8.) On November 16,

2017, Cree produced the documents it was able to locate that had

"the same file name[s] as the documents listed in [OptoLum's]

spreadsheet." (McCoy Decl., Ex. K (Doc. 155-12).)

On April 25, 2018, OptoLum informed Cree that OptoLum's

review of the produced attachments indicated that the "extent

and importance of the archived Mimosa attachments [was] greater

than had been previously understood . . . ." (McCoy Decl., Ex. L

(Doc. 155-13) at 1.) OptoLum asserted that more than 750 e-mail

attachments were missing, and that many related to "the

development of the infringing bulb and as such are crucial to

OptoLum's case." (Id.) OptoLum therefore requested that Cree

"restore the appropriate backup tapes" because there was good

cause as required under the ESI Order. (Id.) Cree responded that

it had produced "thousands" of documents in response to

OptoLum's September 13, 2017 request, many of which OptoLum

still asserted were missing.[2] (See McCoy Decl., Ex. M (Doc. 155-

14) at 1; Def.'s Br. (Doc. 157) at 9-13.) Cree asserted that it

was unreasonable for OptoLum to request documents that (i) were

---

[2] Cree now argues that it produced 697 documents in response
to OptoLum's request. (See Def.'s Br. (Doc. 157) at 9.) It
appears to this court that Cree's November 16, 2017 production
contained 2,018 documents, but some of those documents did not
relate to the issues with the Mimosa System. (See McCoy Decl.,
Ex. K (Doc. 155-12).)

duplicative of those already produced, (ii) contained

information available through previously produced or publicly

available documents, or (iii) were irrelevant to OptoLum's

claims. (See McCoy Decl., Ex. M (Doc. 155-14) at 1-2.) Cree

requested that OptoLum identify any outstanding requests and

explain why each document was relevant, not duplicative, or did

not contain information that was publicly available or

previously disclosed. (See id.) Cree asserts that OptoLum did

not comply, (Def.'s Br. (Doc. 157) at 14), and the parties

agreed on July 11, 2018, that they were at an impasse, (see

McCoy Decl., Ex. A (Doc. 155-2)).

On October 5, 2018, OptoLum moved this court to compel the

restoration and production of the non-produced attachments

pursuant to Fed. R. Civ. P. 26 and Local Rule 37.1. (Pl.'s Br.

(Doc. 155) at 1.) OptoLum asks this court to compel Cree to

restore and produce the allegedly missing attachments from the

Mimosa System.[3] (See id.) On October 20, 2018, Cree responded,

arguing that OptoLum never provided the good cause required

---

[3] In the alternative, OptoLum asks this court to compel Cree
to retrieve the missing attachments from corporate backup tapes.
(E.g., id. at 1, 4.) This appears to be a reasonable
alternative, but the parties do not elaborate on it. As a
result, this court is unable to find that OptoLum's alternative
request is reasonable and proceeds on the matter as briefed with
respect to the Mimosa System restoration.

under the ESI Order and that the Federal Rules of Civil Procedure do not require restoration and production of the missing documents, which are not readily accessible and cumulative, duplicative, or irrelevant to OptoLum's claims, and because restoration would be disproportional to the needs of the case. (See Def.'s Br. (Doc. 157) at 14-27.) Cree requests that, if this court grants OptoLum's motion, it require OptoLum to bear the restoration costs. (Id. at 28.) On October 26, 2018, OptoLum replied. (Pl.'s Reply Mem. in Supp. of Mot. to Compel ("Pl.'s Reply Br.") (Doc. 158).)

On November 8, 2018, this court held a status conference. (See Minute Entry 11/08/2018.) This court indicated that it was difficult to determine whether OptoLum had shown good cause as required under the ESI Order. This court further indicated that it did not find the preliminary cost of $13,500 to restore the Mimosa System disproportional in the context of this case and suggested that it was considering a "loser pays" fee-shifting arrangement, dependent on whether the restoration successfully restores any relevant documents. This court requested additional briefing from the parties and exemplar documents from OptoLum.

On November 21, 2018, OptoLum submitted its supplemental memorandum, (Pl.'s Suppl. Mem. in Supp. of Mot. to Compel ("Pl.'s Suppl. Br.") (Doc. 162)), and ten additional sample

documents, (McCoy Decl., Ex. A (Doc. 163-1)). On November 30, 2018, Cree responded, (Def.'s Suppl. Resp. to Pl.'s Mot. to Compel ("Def.'s Suppl. Br.") (Doc. 164)), and provided numerous exhibits, (Declaration of Peter D. Siddoway ("Siddoway Decl."), Exs. B-KK (Docs. 164-2 to 164-37)), which Cree argues demonstrate that the documents OptoLum seeks are either duplicative or contain information cumulative of those already produced by Cree, (see Def.'s Suppl. Br. (Doc. 164) at 2-4).

## II. **STANDARD FOR A MOTION TO COMPEL**

District courts have broad discretion in deciding whether to grant or deny a motion to compel, and the decision is reviewed only for abuse of discretion. Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc., 43 F.3d 922, 929 (4th Cir. 1995) (citations omitted). Under the Federal Rules of Civil Procedure,

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). As to electronically stored information specifically,

[a] party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

Fed. R. Civ. P. 26(b)(2)(B). Finally, this court must limit

otherwise permissible discovery if:

(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

(ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

(iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C).

Two overarching principles guide this court. First,

notwithstanding the limitations set forth above, "[d]iscovery

under the Federal Rules of Civil Procedure is broad in scope and

freely permitted." Carefirst of Md., Inc. v. Carefirst Pregnancy

Ctrs., Inc., 334 F.3d 390, 402 (4th Cir. 2003) (citation

omitted). Second, district courts "have broad discretion in

their resolution of discovery problems that arise in cases

pending before them." Id. (alterations, citations, and internal quotation marks omitted). For example, this court can order cost-shifting to protect a party from undue burden or expense. See Fed. R. Civ. P. 26(c)(1)(B).[4]

## III. **ANALYSIS**

The parties do not dispute that the ESI Order governs the restoration issue. (See Pl.'s Br. (Doc. 155) at 5-6; Def.'s Br. (Doc. 157) at 15.) This court agrees with Cree that the ESI Order operates here as a burden-shifting mechanism. (See Def.'s

---

[4] This court notes that a party seeking a protective order "specifying terms, including time and place or the allocation of expenses, for the disclosure or discovery" must include in a motion to the court "a certification that the movant has in good faith conferred or attempted to confer" with the parties. Fed. R. Civ. P. 26(c)(1). Given the apparent good faith communications between the parties, (but see Pl.'s Br. (Doc. 155) at 6 (noting Cree's "refusal" to engage in good faith discussions)), this court exercises its discretion by considering Cree's request for cost-shifting, notwithstanding any procedural shortcomings. Cf. Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment (discussing the express recognition of protective orders that allocate expenses for disclosure or discovery; stating that an explicit recognition of a court's authority will preclude parties from disputing it; yet recognizing that cost-shifting should not be a common practice); see also Fed. R. Civ. P. 26(b)(2)(B) ("The court may specify conditions for the discovery [of electronically stored information].");, Zubulake v. UBS Warburg LLC, 217 F.R.D. 309, 316 (S.D.N.Y. 2003) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 358 (1978)) ("[The responding party] 'may invoke the district court's discretion under Rule 26(c) to grant orders protecting [it] from 'undue burden or expense' . . . including orders conditioning discovery on the requesting party's payment of the costs of discovery.'").

Br. (Doc. 157) at 15.) That is, generally the party resisting discovery of electronically stored information must demonstrate an undue burden or cost and the requesting party must then show good cause. See Fed. R. Civ. P. 26(b)(2)(B). Under the ESI Order, however, the parties need not restore the Mimosa System absent a showing of good cause by the requesting party. (See ESI Order (Doc. 63) ¶ 5f.) Thus, this court's decision whether to order restoration of the Mimosa System turns on whether OptoLum has shown good cause, considering the limitations of Fed. R. Civ. P. 26(b)(2)(C). See Fed. R. Civ. P. 26(b)(2)(B).

A non-exhaustive list of good cause factors includes: (i) relevancy; (ii) proportionality to the needs of the case, considering, inter alia, the issues at stake, the amount in controversy, the parties' resources, and the burden or expense of the discovery weighed against the benefit; and (iii) the duplicity or cumulativeness of the requested data, including whether the data can be obtained elsewhere. Fed. R. Civ. P. 26(b)(1) and (b)(2)(C); see also Fed. R. Civ. P. advisory committee's note to 2006 amendment.

## A.   Relevance

Information "relevant to [a] party's claim or defense" need not be admissible in evidence to be discoverable. Fed. R. Civ. P. 26(b)(1). Under Rule 26(b), relevant is "synonymous with

'germane,'" and courts should construe relevance broadly. See Charles Alan Wright et al., 8 Federal Practice and Procedure § 2008 (3d ed. Sept. 2018). Nevertheless, "a party . . . should be able to explain the ways in which the underlying information bears on the issues as that party understands them." Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment. Examples of information relevant to a party's claim or defense include: "(i) other incidents of the same type, or involving the same product; (ii) information about organizational arrangements or filing systems; and (iii) information that could be used to impeach a likely witness." See id. (alterations omitted).

OptoLum asserts that Cree's citation to two of the missing documents in its Rule 33(d) interrogatory responses shows the relevancy of the missing e-mail attachments. (Pl.'s Br. (Doc. 155) at 2-3; McCoy Decl., Ex. D (Doc. 155-5) at 23, 29-32.) Further, many of the missing file names reference bulb prototypes and testing, including "MATT," which was Cree's code name for the prototype that later became the accused products. (Pl.'s Br. (Doc. 155) at 3; McCoy Decl., Ex. B (Doc. 155-3) at 1-13.) In addition, many of the missing attachments relate to e-mails to or from custodians identified in Cree's Rule 26 disclosures. (See Pl.'s Br. (Doc. 155) at 3.) Finally, OptoLum also argues that the missing emails might support its allegation

that Cree's infringement was willful. (Pl.'s Suppl. Br. (Doc. 162) at 5.)

Cree argues that such "[c]onclusory or generalized allegations are insufficient to establish relevance," (Def.'s Br. (Doc. 157) at 22 (collecting cases)), and cites to non-binding authorities for the proposition that a moving party must show that the specific information requested is both relevant to its claims and only available in the missing documents. (Id. (citations omitted).) Cree further argues that OptoLum fails to demonstrate that any of the "bulb" references are to the accused bulbs or even to Cree bulbs. (Id. at 24.) Cree asserts that its interrogatory responses represented that the documents as produced are relevant and not that the missing attachments would be relevant if they were produced. (Id. at 23.) Cree also argues that the relevance of a custodian does not establish the relevance of the document. (Id. at 23-24.) Even if OptoLum could point specifically to missing attachments referencing accused bulbs or MATT in the correct context of Cree's codename, "[i]dentifying a few documents that appear to relate to one relevant issue in the case cannot support [OptoLum's] motion" seeking to compel production of "more than 1,000 documents." (Id.) That is especially true, Cree continues, when Cree can demonstrate that most of the documents are not relevant. (Id. at

25-26 (identifying sixty file names that do not indicate any relevance and ninety-four files that are "demonstrably" irrelevant).)

This court agrees that many of the documents OptoLum seeks are clearly irrelevant. In at least a few instances, however, OptoLum has identified missing attachments that are relevant or potentially relevant. At the status conference on November 8, 2018, the parties informed this court that only the patent infringement claims remain in this case. The parties agree that the most critical timeframe for these claims is when the accused products came to market in March 2013. OptoLum asserts that the development period for the accused products, beginning in January 2012 at the latest, is critical as well. The missing documents Cree cites in its Rule 33(d) interrogatory responses are from October 2012. (McCoy Decl., Ex. D (Doc. 155-5) at 23, 29-32.) The sample documents that OptoLum first provided to this court that reference MATT in a seemingly relevant context are from September 2012 and October 2012. (See McCoy Decl., Ex. B (Doc. 155-3) at 1-13.) While Cree argues that the MATT prototype is not an accused product and its relevance is therefore "diminished," (Def.'s Suppl. Br. (Doc. 164) at 3), Cree concedes that "documents relat[ing] to 'bulbs,' or to 'Matt' . . . may

[relate to] issues in this litigation," (see Def.'s Br. (Doc. 157) at 19).

In support of its supplemental memorandum, OptoLum produced ten sample e-mails that Cree allegedly had not already identified as being produced elsewhere. (Pl.'s Suppl. Br. (Doc. 162) at 5.) As discussed below, Cree argues that it previously produced two of these documents and that OptoLum "fails to identify specific information within these remaining eight examples that is relevant to its infringement analysis." (Def.'s Suppl. Br. (Doc. 164) at 3.) This court declines to hold OptoLum to the impossible standard of identifying specific information in documents that it has not seen. The sample e-mails are from September 2012 through March 2013, when OptoLum asserts that Cree's "bulb team" was designing the accused products. (Pl.'s Suppl. Br. (Doc. 162) at 5; McCoy Decl., Ex. A (Doc. 163-1) at 4-35.)

This court agrees with OptoLum that communications between relevant custodians during this timeframe that pertain to the design and testing of prototypes "informs OptoLum's understanding of the operation of the resulting accused products and Cree's decision-making process." (Pl.'s Suppl. Br. (Doc. 162) at 5.) These are more than bare conclusory statements and appear supported by the evidence. While this court is skeptical

that the missing attachments might inform OptoLum's allegation that Cree's infringement was willful – presumably evidence enlightening OptoLum on Cree's state of mind would be in the e-mails themselves, which OptoLum already has – OptoLum has sufficiently demonstrated the relevance of some of the missing documents for this factor to weigh in OptoLum's favor.

**B.    Proportionality**

This court must account for "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). This court finds the request here proportional because of the relatively minimal cost of restoring the Mimosa System.

As discussed below, Cree has provided compelling evidence that it has (i) already produced some of the allegedly missing documents and (ii) produced other documents containing the same or similar substantive information. Further, at OptoLum's request, Cree appears to have searched for and produced many of the documents over a year ago. (See Def.'s Br. (Doc. 157) at 2; McCoy Decl., Ex. K (Doc. 155-12).) In addition, Cree has demonstrated that it currently has no easy access to the

remaining missing documents and, given the history of technical issues with the Mimosa System, there is a significant chance that the restoration might be futile. (See Def.'s Br. (Doc. 157) at 16-17; see also Ellington Aff., Ex. JJ (Doc. 156-36) ¶¶ 11, 13.) It appears to this court that the burden of restoring the Mimosa System might outweigh any benefits derived from the restoration. Given the parties' resources, however, an estimated preliminary expense of at most $13,500 is simply not disproportional in this case.

The parties dispute the amount of damages that remain following the dismissal of the non-infringement claims. At the status conference on November 8, 2018, counsel for OptoLum estimated that damages would include a reasonable royalty rate applied to an estimated revenue base of between $300 and $400 million, plus any exceptional damages or willfulness enhancement.[5] Counsel for Cree maintained that the revenue base from the allegedly infringing products is between $115 and $315 million. Applying a one-percent royalty rate results in Cree's estimated damages of between $1.15 and $3.15 million. Even using the low estimate of $1.15 million, a cost of $13,500 is not

---

[5] At the status conference, this court merely asked for an informal estimate of damages, and this court reiterates here that the parties are in no way bound by those estimates.

significant enough to be disproportional under Fed. R. Civ. P.

26(b)(1). See, e.g., Peskoff v. Faber, 251 F.R.D. 59, 60 (D.D.C.

2008) (citation omitted) (finding that a $33,000 forensic search

would not "dwarf" plaintiff's $2.5 million damages estimate).

This court recognizes that $13,500 is only the estimated

cost of restoring the Mimosa System and investigating whether

the missing documents exist and is not inclusive of the

additional costs of producing any restored documents. There are,

of course, technical and attorney-review costs associated with

document productions. As this court understands it, however, any

attorney and/or non-attorney document review should be minimal

because the parent e-mails to all of the missing attachments

have been produced. That is, responsiveness and privilege

determinations for this small universe of documents have already

been made based on the parent e-mails.

### C. **Duplicative, Cumulative, or Obtained Elsewhere**

This court "must limit the . . . extent of discovery

otherwise allowed . . . if it determines that . . . the

discovery sought is unreasonably cumulative or duplicative, or

can be obtained from some other source that is more convenient,

less burdensome, or less expensive." Fed. R. Civ. P.

26(b)(2)(C).

Cree demonstrates that some of the documents OptoLum requests are duplicative. Cree previously produced two of the ten documents that OptoLum provided to this court in support of its supplemental brief. (Compare McCoy Decl., Ex. A, App. C (Doc. 163-1) at 11-12, with Siddoway Decl., Ex. B. (Doc. 164-2) at 2; compare McCoy Decl., Ex. A, App. D (Doc. 163-1) at 14-15, with Siddoway Decl., Ex. C (Doc. 164-3) at 3 and Siddoway Decl., Ex. D (Doc. 164-4) at 2-10.)[6] Cree's earlier brief identifies others. (Def.'s Br. (Doc. 157) at 20; compare, e.g., Siddoway Decl., Ex. G. (Doc. 156-7) at 11, with Siddoway Decl., Ex. X (Doc. 156-24) at 2-3 and Siddoway Decl., Ex. Y (Doc. 156-25) at 2-12.)

It is also apparent to this court that the information in the remaining eight samples OptoLum provided relates to content in other documents previously produced by Cree. (See Def.'s Suppl. Br. (Doc. 164) at 3-8.) But this court declines to find that Cree has sufficiently demonstrated that all of the information contained in the missing documents is cumulative of documents and data previously produced. The data sought must be

---

[6] Although one of the specific attachments is not included in the documents Cree provided to this court, it is evident that Cree produced to OptoLum the requested document without a corrupt file, i.e., without a Mimosa slipsheet, and in native format as well. (See Siddoway Decl., Ex. C (Doc. 164-3) at 2.)

unreasonably cumulative; given the relevance of the data OptoLum seeks, from what OptoLum describes as a crucial time, this court cannot find that the data OptoLum seeks is unreasonably cumulative. Nevertheless, this court has reviewed the many sample documents Cree provided and will account for any cumulative or duplicative information. (See, e.g., Siddoway Decl., Exs. F-KK (Docs. 164-6 to 164-37); see also Def.'s Suppl. Br. (Doc. 164) at 4 ("Cree has produced hundreds of documents relating [to] the testing and design of the MATT prototype.").)

Cree demonstrates that a few of the documents that OptoLum seeks can be obtained from publicly available sources. (Def.'s Br. (Doc. 157) at 20-21 (providing public links to missing attachments).) Forcing OptoLum to search for missing attachments on the Internet, however, does not strike this court as particularly more convenient or less burdensome than restoring the Mimosa System, especially in light of the reasonable expense of restoration.

### D. **Cost-Shifting**

In this circuit, district courts have "nearly unfettered discretion" to control discovery. See Hinkle v. City of Clarksburg, 81 F.3d 416, 426 (4th Cir. 1996) (citation omitted). That discretion can take the form of a cost-shifting order to protect a party from an undue burden or cost associated with

restoration of electronically stored information that is not reasonably accessible. See Fed. R. Civ. P. 26(b)(2)(B) and (c)(1)(B); Qinby v. WestLB AG, 245 F.R.D. 94, 104 (S.D.N.Y. 2006) ("[C]ost-shifting is appropriate only where electronic discovery imposes an undue burden or expense."); see also supra at 10 n.4. This court finds that restoration of the Mimosa System is an undue burden on Cree and will order that the parties split the costs associated with the restoration.

The missing attachments themselves are not reasonably accessible at this time. To be clear, the missing data did not become relatively inaccessible after Cree was on notice that the information might be relevant to reasonably anticipated litigation. This court agrees with Cree that it has produced documents to OptoLum as they are kept in the ordinary course of business. (Def.'s Br. (Doc. 157) at 5.) While the documents are not reasonably accessible right now, this court does not find the expense of restoring the Mimosa System significant given the parties' resources. This court notes that the parties expended more resources arguing OptoLum's motion than they are likely to spend on the restoration itself.

It appears to this court that restoration might be futile. Both parties have spent significant time attempting to resolve these issues. OptoLum informs this court that it spent thirty-

nine hours of attorney and paralegal time communicating with Cree and trying to piece together the attachments, which does not include the time spent drafting this motion. (Pl.'s Br. (Doc. 155) at 4.) And Cree spent a significant amount of time over a year ago searching for documents and then producing those that it located. (Def.'s Br. (Doc. 157) at 2.) In support of its opposition to OptoLum's motion, Cree also retained a forensic examiner, Derek Ellington, to review and preliminarily opine on the feasibility of restoring the Mimosa System. (See Ellington Aff., Ex. JJ (Doc. 156-36) ¶¶ 1-14.) Mr. Ellington states that there is "a strong possibility that the previous data corruption . . . has already caused irreparable loss of data," and he has identified significant challenges in bringing the Mimosa System back online and searching its data. (Id. ¶¶ 11, 13.)

In sum, this court finds that some of the missing attachments are relevant to OptoLum's claims or defenses and some are demonstrably irrelevant and that some of the missing data that OptoLum seeks is duplicative. This court further determines that OptoLum's restoration demand is proportional to the needs of the case. Weighing the cost of restoration against the factors favoring restoration, and taking into consideration the limitations of Rule 26(b)(2)(C), good cause exists to compel restoration of the Mimosa System. However, given Cree's

productions to date, as well as its concerns about duplicity and futility, this court finds that restoration of the Mimosa System is an undue burden on Cree. Peskoff, 251 F.R.D. at 61 (citing AAB Joint Venture v. United States, 75 Fed. Cl. 432, 443 (2007) ("The burden on the responding party is to be considered in conjunction with the Rule 26(b)(2)(C) analysis . . . .")); see also Zubulake, 217 F.R.D. at 318 (citation and internal quotation marks omitted) ("The burden or expense of discovery is . . . undue when it outweighs its likely benefit . . . .").

This court will order OptoLum to pay for one half of the cost of the restoration of the Mimosa System and any related forensic examination. This court will order Cree to prepare an invoice payable by OptoLum for one half of the costs associated with the restoration and any related forensic examination. This court will further order that costs associated with the review and production of any restored documents by Cree be borne exclusively by Cree.

Finally, this court denies OptoLum's request that it be allowed to have its own expert evaluate the Mimosa System or otherwise observe the restoration. This court finds that neither Cree nor OptoLum have acted in bad faith, and this court is confident that Cree can competently and expediently manage the restoration.

**IT IS THEREFORE ORDERED** that Plaintiff's motion to compel, (Doc. 154), is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant shall serve Plaintiff with a statement of the reasonable costs and expenses incurred in restoring the Mimosa System and an invoice payable by Plaintiff for one half of those costs and expenses. Such costs and expenses are not to include either attorney or non-attorney fees associated with any review of recovered data or costs associated with Defendant's production to Plaintiff of such data.

**IT IS FURTHER ORDERED** that, within ten days of receiving such statement of reasonable costs and expenses, Plaintiff shall file with this court either: (1) a notice indicating Plaintiff's agreement to pay its share of the costs and expenses, or (2) a memorandum of no more than five pages explaining why Plaintiff contests the reasonableness of the amount.

**IT IS FURTHER ORDERED** that, within five days of filing by Plaintiff of any memorandum contesting the reasonableness of the claimed expenses, Defendant shall file a response of no more than five pages.

**IT IS FURTHER ORDERED** that failure to comply with this Order shall result in the payment of the costs and expenses

associated with restoring the Mimosa System by the non-complying party.

    This the 28 day of December, 2018.


                            William L. Osteen
                            United States District Judge